### 11797

### PEOPLES BANK v. WALKER

#### (128 S. E., 715)

1. Landlord and Tenant—Share Cropper or Laborer Has No Title to Crop Until After Division.—Share cropper or laborer has no title to any part of crop until after its division.

2. Chattel Mortgages—Instructions Relating to Share Cropper Rights in Crop, and Right to Have Interest after Their Division Applied to Mortgage Debt, Held Sustained by Evidence. —Evidence, in action in claim and delivery by mortgagee against mortgagor, a share cropper, *held* to warrant inference that there was a division of cotton crop between landlord and cropper, so as to justify instructions relating to cropper's rights in crop before and after its division, and his right to have it applied on mortgage.

3. Chattel Mortgages—Mortgagee Estopped to Deny Mortgagor's Title to Cotton Turned Over to and Sold by It.—Where cotton was delivered to cropper mortgagee on his notes and mortgage,

and cropper's one-half thereof was sold to pay the mortgage, mortgagee could not deny cropper's title for want of division between him and his landlord to defeat cropper's right to credit therefor.

4. CHATTEL MORTGAGES—MORTGAGEE MAY SEIZE MORTGAGED GOODS SO LONG AS ANY PART OF DEBT IS DUE AND UNPAID.—So long as any part of note secured by chattel mortgage is due and unpaid, mortgagee may seize and dispose of mortgaged property.

5. CHATTEL MOTGAGES—MOTGAGOR'S TESTIMONY HELD SUFFICIENT TO TAKE QUESTION OF PAYMENT OF MORTGAGE TO JURY.—In action in claim and delivery by mortgagee against mortgagor, a share cropper, whose defense was that mortgage was paid in cotton, mortgagor's testimony that if he had been credited with cotton sold he would owe mortgagee nothing, although mortgagor by mistake also testified that debt was due when mortgaged property was seized, *held* sufficient to take question of payment of mortgage to jury.

6. CHATTEL MORTGAGES—EVIDENCE HELD TO TAKE COUNTERCLAIMS FOR CONVERSION OF MORTGAGED PROPERTY TO JURY.—In action in claim and delivery by mortgagee against mortgagor, who set up counterclaims alleging damages for conversion of mortgaged property, and for loss resulting from failure to properly operate farm because of such conversion, evidence *held* sufficient to take counterclaims to jury.

7. TRIAL—INQUIRY BY COURT IN ACTION FOR CLAIM AND DELIVERY FOR MORTGAGED GOODS HELD NOT TO INVADE PROVINCE OF JURY.—In action by mortgagee in claim and delivery against mortgagor, in which defense was payment, where mortgagee sold part of a cotton crop and then paid landlord for gathering cotton out of cropper's half interest, Court's inquiry as to right of plaintiff to divert such sum *held* not to invade province of jury, where Court expressly charged that such questions were for jury.

8. CHATTEL MORTGAGES—MORTGAGEE OF SHARE CROPPER'S INTEREST IN MORTGAGED CROP HELD CHARGEABLE WITH APPLICATION OF FUNDS ARSING FROM SALE OF CROP.—Where share cropper mortgaged cotton crop, and part of such cotton was afterwards sold by mortgagee, charge that mortgagee was chargeable with application of whatever interest mortgagor had in fund arising from sale of cotton on note and mortgage *held* not erroneous.

9. TRIAL—COURT'S REQUEST TO COUNSEL TO ELICIT CERTAIN TESTIMONY HELD NOT TO INJECT IRRELEVANT ISSUES.—In action by mortgagee in claim and delivery against mortgagor, in which defense was payment, where mortgagee sold part of cotton crop and paid mortgagor's landlord for gathering cotton out of mortgagor's half interest, Court's request that mortgagor's counsel elicit testimony as to who gathered the crop and why it was so gathered, and statement as to why he admitted such testimony *held* not to inject irrelevant issues, and not to constitute charge on the facts.

Before MAULD.N, J., Kershaw, November, 1924. Affirmed.

Action in Claim and Delivery by the Peoples Bank, formerly the Bank of Lugoff, against W. A. Walker in which defendant filed counterclaims. From a judgment for defendant on his counterclaim plaintiff appeals.

*Messrs. Kirkland & Kirkland* and *W. B. deLoach,* for appellant, cite: *Title to crop of share cropper:* 102 S. C., 499; 108 S. C., 206; 110 S. C., 488; 118 S. C., 246. *Legal title to mortgaged property:* 120 S. C., 221. *Equitable action to redeem interest in chattel:* 108 S. C., 206.

*Mr. T. K. Trotter,* for respondent, cites: *Action against mortgagee for share cropper's interest:* 103 S. E., 587; 114 S. C., 353. *Mortgagee of share cropper entitled to accounting:* 87 S. E., 143; 102 S. C., 499. *Question of accounting for jury:* 87 S. E., 143; 33 S. E., 463; 56 S. C., 302; 69 S. E., 673; 87 S. C., 370; 103 S. E., 587; 114 S. C., 353. *Lienor in possession of property or proceeds under lien:* 6 S. C., 74; 20 S. E., 542; 27 S. C., 44; 2 S. E., 709; 32 S. C., 277; 10 S. E., 1069; 37 S. C., 200; 15 S. E., 968; 34 A. S. R., 736; 73 S. C., 181; 53 S. E., 170; 38 S. C., 507; 17 S. E., 364.

July 6, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE J. W. JOHNSON.

This is an action in claim and delivery by plaintiff against defendant for possession of certain personal property, covered by a crop and chattel mortgage, given by defendant to plaintiff. The mortgage secured two notes; one for $600, and the other for $100. Under these proceedings two mules, two cows, and a calf were seized and sold—no crops were seized. The proceeds from this sale were $130.36.

At the time of the commencement of this action plaintiff claimed that defendant was due plaintiff on said notes and

mortgage the sum of $284.03, besides interest and attorney's fees. The defendant answering alleged that he had made payments to plaintiff in cotton for which he had received no credit, and that if proper credit had been given he would have owed plaintiff nothing at the time this action was instituted and the property sold. He also set up two counterclaims:

First. That the plaintiff unlawfully caused to be seized and converted to its own use the personal property described in the mortgage, of the value of $350.

Second. That plaintiff seized and disposed of his property on the 1st day of June, 1921, at the time when defendant had crops planted and under cultivation, and had gone to the expense of over $400 for planting crop, and for fertilizer used on same, and that by reason of said seizure and conversion at that season of the year, and defendant's inability to purchase more mules to work the crop, he suffered damages in the sum of $300, and demanded judgment on his counterclaim for $650.

The case came on for trial before his Honor, T. J. Mauldin, and a jury at the fall term of Court for Kershaw County, 1922, and resulted in a verdict in favor of the defendant against plaintiff for the sum of $650.

At the close of all of the testimony plaintiff moved for a directed verdict, which was refused, and after verdict plaintiff moved for a new trial on the ground that the verdict was not supported by the evidence. This motion was also overruled. Whereupon plaintiff appealed, imputing error to the presiding Judge by fourteen exceptions.

### STATEMENT OF FACTS

A brief statement of undisputed facts may aid in clarifying the situation.

During the year 1920, the defendant, Walker, was a share cropper on the farm of one W. H. Tiller. Under the terms of the contract between Tiller and Walker each was to receive one-half of the cotton raised. The record is

silent as to any other terms that may have been embraced in the contract. Tiller indorsed the notes of Walker which the latter gave to plaintiff. To further secure the notes of Walker, plaintiff took mortgages from him covering the personal property mentioned, and his one-half interest in the crops.

It is alleged in the complaint that the value of the property covered by plaintiff's mortgage was $450. This is admitted in the answer.

Plaintiff offered no testimony as to the value of the property seized and disposed of, other than it brought at the sale $130.36. Defendant testified that the property was worth $410. H. G. Walker, a witness for defendant, testified that it was worth $400. There were 21 bales of cotton raised on this farm. All of this cotton was delivered by Walker to Tiller. Nine bales of short staple cotton were first delivered, and Mr. J. B. Wallace, the cashier of plaintiff bank, the only witness offered by plaintiff, testified that Walker turned over to plaintiff in November and December, 1920, in cash, $315.97, to be applied on Walker's notes; that this payment was from sales of Walker's one-half interest in 9 bales of cotton. On April 18, 1921, plaintiff's cashier wrote to the defendant a letter, of which the following is a copy:

"Lugoff, S. C., April 18, 1921.

"Mr. W. A. Walker, Lugoff, S. C.—Dear Sir: Please take notice that on Wednesday, April 20, we will sell to the best bidder the following cotton held by this bank on warehouse receipts delivered on your notes and mortgages of crops of 1920: Four (4) bales of staple cotton, 'W. A.,' weight 1900 pounds, more or less. Eight (8) bales short staple cotton 'W. A.,' weight 3684 pounds, more or less. We will receive bids of bona fide parties up to 12 m. (noon), and you are requested to protect your interest in the said cotton.                    "The Bank of Lugoff,

"J. B. Wallace, Cashier."

The witness Wallace testified that the 12 bales of cotton were sold on April 17, 1921, to W. H. Tiller, "who bid a quarter of a cent more than any other bidder."

## EXCEPTIONS

Exception 1: "For error in his Honor in charging the jury, 'nevertheless, the defendant in this case, while he had no interest in these crops until they were gathered and the division made, yet, upon the division being made, whatever the defendant had by virtue of that relationship and the contract as between himself and Tilller, it would attach upon the division of those crops.' The error being that his Honor charged the jury upon matter of fact, there being no evidence that a division of the crop had ever been made."

Exception 2: "For error in his Honor in charging the jury, 'if, upon the division of those crops between the defendant in this case and Tiller, the landlord, there was anything coming to this defendant, he would have a right at your hands, to have the application of that interest, whatever it might be, upon these notes sued upon in this case; and it is a question for you to determine how much interest this defendant had, predicated upon the testimony in this case.' It being a charge upon the facts, there being no testimony that a division of the crop was ever made and there being no testimony that he had any interest, but, on the contrary, the undisputed proof is that Tiller was the landlord and defendant, Walker, was cultivating crop as tenant, to be paid one-half the crop, therefore he had no interest in the crop, except a lien on the crop for his labor. And for error in charging the jury that the defendant would have a right to have the application of that interest, whatever it might be, upon note sued upon."

These exceptions raise the same question, and will be considered together.

Our Courts have decided in a number of cases that a share cropper or laborer has no title to any part of the crop until after division is made. *Malcolm Mer-*

*cantile Co. v. Britt,* 102 S. C., 499; 87 S. E., 143. *State v. Sanders,* 110 S. C., 487; 96 S. E., 622. *Dacus v. Williamston Mills,* 118 S. C., 245; 110 S. E., 393. *Lipscomb v. Johnson,* 123 S. C., 44; 115 S. E., 753. *Birt v. Greene & Co.,* 127 S. C., 70; 120 S. E., 747.

From the foregoing statement of facts, it appears that there was an actual division between Tiller and Walker of the money derived from the sale of the 9 bales of cotton, and that there was testimony from which the jury might infer that there had been a division of the 12 bales of cotton between them. The fact that Walker was not present and did not actually participate in a division of the cotton means nothing, as it is a well known fact that farmers frequently divide crops when but one of the contracting parties is present. In fact this very thing was done in this case. In addition to the letter above quoted, and the fact that Tiller, the landlord, was the purchaser, there is a statement in the record showing that plaintiff sold the cotton and made division of the proceeds. Furthermore, defendant testified that "he, [Tiller] said he would place the warehouse receipts, my part, with Mr. Wallace, just like he paid Mr. Wallace out of this 9 bales."

But, aside from all this, the testimony shows that the 12 bales of cotton were "delivered [to plaintiff] on your [Walker's] notes and mortgage of crops of 1920," and that Walker's half of the cotton was sold by plaintiff to pay this mortgage. It does not, therefore, lie in planitiff's mouth to say that Walker had no title to this cotton.

These exceptions are overruled.

Exceptions 3, 6, 8 and 9 will be considered together. Exceptions 8 and 9 impute error to the Circuit Judge in refusing to direct a verdict for plaintiff, there being no proof, plaintiff alleged, of the payment in full of the note and mortgage sued on. Exceptions 3 and 6 impute error to the Judge in refusing plaintiff's motion for a

new trial, made on the ground that the verdict was not supported by the evidence, that it was contrary to the greater weight of the evidence, and that there was no evidence that plaintiff's note and mortgage had been paid at the time of the seizure of the property thereunder.

When this case was argued before this Court, the writer of this opinion was impressed with the position taken by counsel in these execeptions, to the effect that inasmuch as the undisputed testimony showed that the debt, secured by plaintiff's mortgage had not been paid at the time of the seizure and sale of the property, that plaintiff was entitled to a directed verdict. In fact, he was of the opinion that this ground of appeal should be sustained, and the judgment of the Circuit Court reversed. He gathered from the argument of counsel that the defendant admitted at the trial that he was due plaintiff, at the time the property in question was seized and disposed of, $284.03.

The law in this State is too well settled to require citation of authorities that, so long as any part of a note secured by a chattel mortgage is unpaid and the debt due, the mortgagee has the legal right to seize and dispose of the property covered by the mortgage.

Defendant testified: "I owed the Bank of Lugoff a balance at the time these mules were taken. I owed them then a balance of $284.03 before they were taken." If defendant's testimony had closed here, plaintiff would have been entitled to a directed verdict. But it did not close at this point. Defendant continued: "But I was looking for the cotton when it was sold to pay that, but that was due before this cotton was sold, this 12 bales." Thus it becomes apparent that defendant had lost sight of the fact that the 12 bales of cotton had already been sold, and his admission was based upon a mistake of fact. Furthermore, defendant's whole case was based upon the defense that he owed plaintiff nothing at the time of the seizure, and that the seizure was therefore tortious. He had already testified

that if credit had been given him for his one-half interest in the 12 bales of cotton that plaintiff's debt would have been paid. There was certainly enough testimony to go to the jury on this point, and his Honor, the presiding Judge, committed no error in overruling defendant's motion for a directed verdict, and in refusing plaintiff's motion for a new trial made on practically the same grounds.

Exception 4: This exception complains that his Honor erred in refusing plaintiff's motion for a new trial made on the ground that the jury necessarily found that the debt due by defendant to the bank had been paid, and that defendant had established his two counterclaims, there being no evidence, plaintiff alleges, going to establish the counterclaims, and no evidence that plaintiff wrongfully caused to be seized and converted to its own use the property seized by the sheriff.

Exception 5: For error committed by the Judge in not granting plaintiff's motion for a new trial, there being no evidence, plaintiff alleges, to support the verdict for the sum of $600, or for any amount.

Defendant testified that he owned the bank nothing at the time it seized and sold his mules and cows; that they were worth $410; that plaintiff seized his mules in June, after his crop was planted and was growing. "I was handicapped in my farming in 1921 as a result of the loss of these mules. In my opinion I was damaged by the loss of these mules about $500 or $600 in that 1921 crop." This testimony certainly raised issues of fact which had to be passed on by the jury.

These exceptions are overruled.

Exception 7: For error in refusing the plaintiff's motion for a new trial upon the grounds that the Court questioned the right of the landlord to appropriate $200 for gathering crops, whereas, plaintiff herein was not a party to the transaction between the landlord and

tenant to gather the crops, and the said transaction should not be charged upon the plaintiff herein.

The record shows that Wallace, the cashier, paid Tiller, landlord, out of Walker's half interest in 12 bales of cotton, for picking, ginning, and packing the cotton, $264.23. Walker testified that he owed Tiller nothing at that time; that Tiller was actually in debt to him, and that he had his due bill for the amount due. This testimony was not disputed. In the light of this testimony, and of the letter of plaintiff stating that this cotton had been turned over to plaintiff to be applied on Walker's notes, the inquiry naturally arose as to plaintiff's right to divert this sum to the payment of a claim of Tiller without even consulting Walker. This happened during the progress of the trial, and was not touched on in his Honor's charge to the jury. His Honor took great pains to impress on the jury that this was a question of fact to be decided by them, and that he could express no opinion on the subject. This exception is overruled.

Exceptions 10 and 11: (10) For error in holding and deciding that the mortgage herein was a lien upon the crops described in the said mortgage. (11) For error in holding and deciding that a division of the crops had been made.

We do not think these exceptions correctly set out the Judge's charge. They are overruled.

Exception 12: For error in holding and deciding that the plaintiff was chargeable with the application of whatever interest the defendant had in the fund arising from the sale of that cotton upon the note and mortgage sued on herein, the plaintiff having no lien on the said crops and no direction being given plaintiff by defendant for the application to the said note and mortgage for any such interest.

Under the facts in this case there was no error in charging the law complained of in this exception. This exception is overruled.

18—S. C. R.—132.

Exceptions 13 and 14: (13) For error in his Honor in requesting defendant's attorney "to gather from the witness whether he gathered the crop there or who gathered the crop and why it was gathered like it was and why it was charged here." The error being that the said testimony was irrelevant, and was a statement of an issue injected in the case, and which went to bind the plaintiff when the said issue could have only been raised between landlord, Tiller, and this defendant, the uncontradicted testimony showing that the charges for gathering the crop were made by Tiller and not by the plaintiff. (14) For error in his Honor in stating: "It is a question for that jury to determine as to what interest Tiller and that man had in that cotton, and that is why I had this defendant to testify as to how this cotton was gathered." The error being that it was a charge upon the facts, and was an injection of an issue in the case which was no defense to plaintiff's cause of action, and went to the extent of making plaintiff liable for the gathering of crops which should have been an issue between defendant, the cropper, and W. H. Tiller, the landlord; Tiller not being a party to this suit.

What we have said under exception 7 is applicable to these exceptions. They are overruled.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE COTHRAN did not participate.